United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MIRELLA RAMIREZ,

Plaintiff,

v.

OAKLAND UNIFIED SCHOOL DISTRICT, et al.,

Defendants.

Case No. 24-cv-09223-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 25

**INTRODUCTION**

The plaintiff Mirella Ramirez, a former teacher, was terminated after she refused to use a student's preferred pronouns.[1] Ms. Ramirez is a devout Catholic who believes it is against her religion to use pronouns that differ from a person's "divinely-intended gender."[2] The district moved the student to a different classroom and initiated a disciplinary action against Ms. Ramirez that led to her termination.[3]

The defendants are Oakland Unified School District, its employees Tara Gard, Lisa Contreras, Violeta Escobar, Angela Bagami-Knight, and Jeff Dillon, in their individual capacities, and its

---

[1] Compl. – ECF No. 1 at 2–3 (¶¶ 1–6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 2–5 (¶¶ 1–6, 22–27).

[3] *Id.* at 2–3, 7–12 (¶¶ 1–6, 57–108).

United States District Court
Northern District of California

Board of Education members Benjamin Davis, Jennifer Brouhard, VanCedric Williams, and Mike Hutchinson, in their individual capacities.[4] The plaintiff asserts the following claims under 42 U.S.C. § 1983: (1) a violation of her First Amendment right to freedom of speech in the form of compelled speech; (2) a violation of her First Amendment right to freedom of speech in the form of retaliation; (3) a violation of her First Amendment right to freedom of speech in the form of content and viewpoint discrimination; (4) a violation of her First Amendment right to free exercise of religion; and (5) a violation of her right to be free from unconstitutional conditions.[5]

The defendants move to dismiss the claims against the school district, arguing that it is a state entity protected by sovereign immunity and is not a "person" under 42 U.S.C. § 1983. The defendants move to dismiss the remaining claims under Rule 12(b)(6) because the individual defendants have qualified immunity and for failure to state a claim.[6]

The motion is granted. Sovereign and qualified immunity apply, and the complaint fails to state a claim on which relief can be granted.

## STATEMENT

The plaintiff Mirella Ramirez taught primarily Spanish-language classes as a kindergarten teacher at Oakland Unified School District's Melrose Leadership Academy from 2017 to 2024. Melrose Leadership Academy is a dual-immersion school, meaning that it offers a structured curriculum that educates children in English and Spanish.[7] Ms. Ramirez is Catholic and believes that her faith prohibits her from referring to a student with a pronoun that does not correspond with their biological sex assigned at birth.[8] In August 2022, a student asked Ms. Ramirez to use male pronouns when referring to the student, even though the student's appearance suggested to Ms. Ramirez that the student was biologically female. She discussed the request with the student's

---

[4] *Id.* at 3–4 (¶¶ 13–21).

[5] *Id.* at 13–17 (¶¶ 117–153).

[6] Mot. – ECF No. 25 at 2.

[7] Compl. – ECF No. 1 at 2, 4 (¶¶ 1, 29–32); Opp'n – ECF No. 35 at 7.

[8] Compl. – ECF No. 1 at 2 (¶ 3); Opp'n – ECF No. 35 at 7–8.

United States District Court
Northern District of California

mother, who confirmed that Ms. Ramirez should refer to the student with male pronouns.[9] Ms. Ramirez believed she could not comply with the request due to her Catholic faith.[10]

After multiple complaints from the student's parents, Ms. Ramirez met with them, defendant Lisa Contreras — the principal of Melrose Leadership Academy, and defendant Violeta Escobar — the vice principal of Melrose Leadership Academy. At this meeting, the parents again asked Ms. Ramirez to use the student's preferred pronouns, and the two defendants told her that California law and district policy required her to comply with the request. The defendants proposed that the student be moved to another classroom, and the parents agreed.[11] The student did not want to change classes and had to be physically intercepted at the door and taken to the different classroom.[12]

On October 4, 2022, parents, teachers, and members of the public petitioned the defendants to take action against Ms. Ramirez.[13] On October 7, 2022, defendant Angela Badami-Knight, a School Partner in the Talent Division at Oakland Unified School District, directed Ms. Ramirez to use masculine pronouns. On October 20, 2022, defendant Contreras issued Ms. Ramirez a formal written reprimand for misgendering the student and insubordination for refusing to comply with district policy.[14] Defendant Badami-Knight and defendant Dillon, a Senior Talent Partner in the Talent Division at Oakland Unified School District, investigated complaints against Ms. Ramirez and recommended dismissing her.[15] Ms. Ramirez then attended a pre-disciplinary hearing with defendant Gard, the Chief Talent Officer for the Oakland Unified School District.[16] After this hearing, Ms. Ramirez was offered accommodations including calling transgender students by their

---

[9] Compl. – ECF No. 1 at 6 (¶ 47).

[10] *Id.* at 6 (¶¶ 47–48).

[11] *Id.* – ECF No. 1 at 3, 6–7 (¶¶ 14–15, 49–56).

[12] *Id.* at 7–8 (¶¶ 57–65).

[13] *Id.* at 8 (¶ 66).

[14] *Id.* at 8–9 (¶¶ 68–75).

[15] *Id.* – ECF No. 1 at 9 (¶ 76).

[16] *Id.* at 3, 9–10 (¶¶ 13, 78–87).

first name, calling students by their last name, teaching another grade level, and teaching at a different school.[17]

Ms. Ramirez found these accommodations unacceptable and asked for training on how to use gender-neutral Spanish. The request was denied, and she was suspended with pay in January 2023. On February 14, 2023, the District Board, including the defendants Board Members Benjamin Davis, Jennifer Brouhard, VanCedric Williams, and Mike Hutchinson, voted to terminate Ms. Ramirez for violating California Education Code § 220 and Oakland Unified School District Board Policy 5145.3.[18]

The Education Code states:

> No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid.[19]

The policy states:

> A student has the right to be addressed by a name and pronoun corresponding to their gender identity that is exclusively and consistently asserted at the school. Upon request, a school shall recognize a student's gender identity that is exclusively and consistently asserted at school. The intentional or persistent refusal to respect a student's gender identity, as opposed to an inadvertent slip or honest mistake, is a violation of this regulation. For example, intentionally referring to the student by a name or pronoun that does not correspond to the student's gender identity would violate this regulation.[20]

Ms. Ramirez claims that the defendants violated her constitutional rights to free speech and free exercise of religion. The court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201, as well as 42 U.S.C. § 1983.

---

[17] *Id.* at 10 (¶ 88).

[18] *Id.* at 4, 12 (¶¶ 18–21, 107).

[19] *Id.* at 12 (¶ 105); Cal. Educ. Code § 220.

[20] Compl. – ECF No. 1 at 12 (¶ 106).

**LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the elements of a claim will not do. *Twombly*, 550 U.S. at 555 (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Factual allegations in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court cannot assume, however, that "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may attack a jurisdiction facially (the allegations are insufficient) or factually (the allegations are untrue). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

**ANALYSIS**

The motion presents three issues: whether the school district has sovereign immunity, whether the individual defendants have qualified immunity, and whether the complaint states a claim.[21] The school district has sovereign immunity because, under the Ninth Circuit's *Kohn* factors, it is a state entity. The individual defendants have qualified immunity because there was no clearly established law putting the individual defendants on notice that they violated the plaintiff's First Amendment rights. Finally, the plaintiff fails to state a First Amendment claim because her speech was not protected and the complaint does not plausibly allege religious hostility.

**1. The District Has Sovereign Immunity**

As a threshold matter, the court must determine whether the school district is protected by Eleventh Amendment sovereign immunity. It is.

The Eleventh Amendment bars a lawsuit against a state or its agencies absent the state's consent or Congressional abrogation of immunity. *Papasan v. Allain*, 478 U.S. 265, 276–77 (1986). The Eleventh Amendment also "bars a federal action for damages, or other retroactive relief, against a state official acting in his or her official capacity." *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 645 (N.D. Cal. 2007). The Ninth Circuit considers three factors to determine whether an entity is an arm of the state: "(1) the state's intent as to the status of the entity, (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn v.*

[21] Mot. – ECF No. 25 at 10–19.

*State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023).[22] The test is entity-based, meaning that a given entity either is or is not an arm of the state; its status does not from one case to the next based on the nature of the suit. *Id.* at 1031.

**1.1 The State's Intent**

The first factor favors sovereign immunity because California intended the district to be an arm of the state.

The first factor turns on whether state law expressly characterizes the entity as a governmental instrumentality rather than as a local governmental or non-governmental entity, whether the entity performs state governmental functions, whether the entity is treated as a governmental instrumentality for purposes of other state law; and whether state representations about the entity's status favors sovereign immunity. *Id.* at 1030 (citing *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008). "The state legislature's characterization of an entity is not the only important metric for the intent factor — state court treatment is also relevant." *Id.*

State law characterizes school districts as state entities. The California Constitution provides for a system of public schools, contemplates school districts that are part of a "Public School System," and establishes a "State School Fund" for said "Public School System." Cal. Const. art. IX §§ 5–6. The state's Education Code establishes a superintendent to oversee "the schools of this state." Cal. Educ. Code, § 33112(a). Similarly, state courts have concluded that school districts are arms of the state. *Hall v. City of Taft*, 47 Cal.2d 177 (Cal. 1956); *Butt v. State of California*, 4 Cal.4th 668 (Cal. 1992).

The district also performs a state function: overseeing and facilitating the education of California's children. As the California Supreme Court previously explained, "management and control of the public schools [is] a matter of state care and supervision . . . . Local districts are the

[22] Before 2023, federal courts in this circuit used the *Mitchell* factors to determine whether an entity is an arm of the state. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017). In 2023, the *Mitchell* factors were replaced by the *Kohn* factors, adopted from the D.C. Circuit. *Kohn*, 87 F.4th at 1030–31.

State's agents for local operation of the common school system…." *Butt*, 4 Cal.4th at 688 (Cal. 1992).

The plaintiff identifies sections of the California Education Code that describe the powers of governing boards and their locally elected members.[23] But the fact that locally elected officials have some power to manage the district does not mean that the district is a local entity. To the contrary, as evidenced by the same statutes, the officials' powers — and the districts they manage — flow from state authority.

The plaintiff also identifies a statute that describes districts as local entities.[24] It provides that "[t]he governing board of any school district, may contract for the services of a hearing officer pursuant to the provisions of Chapter 14 (commencing with Section 27720), Part 3, Division 2, Title 3 of the Government Code and, for purposes of that chapter, the governing board is deemed to be a local body and the school district a local public entity." Cal. Educ. Code §§ 35207. But the rule concerns the district's ability to hire a hearing officer, and expressly states that the district is deemed a local entity "for purposes of that chapter."*Id.* By contrast, the provisions discussed above create school districts and describe the public education system generally. Thus, the provision on which the plaintiff relies is the exception, not the rule.

The first factor favors sovereign immunity.

**1.2 The State's Control**

The second factor favors sovereign immunity because OUSD is controlled by the state.

"The second factor depends on how members of the governing body of the entity are appointed and removed, as well as whether the state can directly supervise and control the entity's ongoing operations." *Kohn*, 87 F.4th at 1030.

The plaintiff argues that local school districts have day-to-day administrative power over their own districts pursuant to California Education Code § 35010(b).[25] The statute provides that

---

[23] Opp'n – ECF No. 35 at 10–12 (citing Cal. Educ. Code §§ 35010(a–b), 35020, 35041.5, 35160, 35160.1, 35162, 35170, 35207, 35313).

[24] Opp'n – ECF No. 35 at 11.

[25] *Id.* at 12.

United States District Court
Northern District of California

"[e]very school district shall be under the control of a board of school trustees or a board of education." *Id.* While local board members control day-to-day administration, ultimately, the state has "total control" over public school funding and "centralized control" over other decisions for public schools, such as textbook use, student suspension, and student expulsion. *Belanger*, 963 F.2d at 253. Put differently, "the state still exercises significant control over school districts." *Sato*, 861 F.3d at 923.

Thus, the second factor favors sovereign immunity.

**1.3 The Effect on the State Treasury**

The third factor favors sovereign immunity because the state is responsible for funding the district and paying its debts and judgments.

The third factor considers the entity's overall effect on the state's treasury. *Kohn*, 87 F.4th at 1030. "The relevant issue is a [s]tate's overall responsibility for funding the entity or paying the entity's debts or judgments, *not* whether the [s]tate would be responsible to pay a judgment *in the particular case at issue*." *Id.* at 1036. The third factor is relevant but not dispositive. *Id.* at 1030.

Though it predates the *Kohn* test, the Ninth Circuit's analysis in *Belanger* is largely dispositive for this factor. The Ninth Circuit held that "[t]he state has assumed the burden of funding public schools" in California, "the bulk of the school district's budget comes directly from the state school fund," and "a judgment against the school district would be satisfied from state funds." *Belanger*, 963 F.2d at 252.

In an attempt to avoid this conclusion, the plaintiff notes that school districts are required under California Education Code § 35208 to insure against judgment for liability for injury to persons.[26] But the fact that the state orders school districts to purchase insurance with *state* funds to protect the *state* treasury from judgments merely reinforces that this factor favors sovereign immunity.

* * *

[26] *Id.* at 13.

In sum, all three *Kohn* factors indicate that the district is a state entity. In addition, the court's holding is consistent with prior treatment of school districts under the *Kohn* factors, as it should be under the entity-based approach. *Price v. Tamalpais Union High Sch. Dist.*, No. 24-CV-08033-JSC, 2025 WL 1046644, at *2 (N.D. Cal. Apr. 8, 2025) (all three *Kohn* factors suggested that California school district was a state entity). OUSD has sovereign immunity.

**2. The Individual Defendants are Entitled to Qualified Immunity**

The second issue is whether the individual defendants have qualified immunity. They do because no binding, analogous precedent put the defendants on notice.

"[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* at 1866. "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id.* at 1867. In determining whether an officer has qualified immunity, courts consider (1) whether the officer violated a constitutional right of the plaintiff, and (2) whether that constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440. Courts may exercise their sound discretion in deciding which of these two prongs should be addressed first. *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Regarding the second prong, the Supreme Court has cautioned that "'clearly established law' should not be defined 'at a high level of generality'" but instead "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "Although th[e Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

The Ninth Circuit has held that deciding "claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" because of the tension between the plausibility standard for pleading a claim and the "low bar" for establishing qualified

immunity. *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (cleaned up). Consequently, at the motion to dismiss stage, "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." *Id.* at 1235.

**2.1 Freedom of Speech**

The plaintiff claims that the defendants violated her First Amendment right to freedom of speech.[27] The defendants argue that the plaintiff's speech was not constitutionally protected because it was in the performance of her official duties.[28]

As a threshold matter, the Supreme Court and the Ninth Circuit have not addressed whether a teacher's use of a student's pronouns is protected speech.

The plaintiff identifies two other binding authorities: *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Janus v. Am. Fedn. of State, Cnty., and Mun. Employees, Council 31*, 585 U.S. 878 (2018). Neither is sufficiently particularized to put the defendants on notice. The Court in *Garcetti* ruled that a deputy district attorney's statements about a pending case were speech pursuant to his official duties and not protected under the First Amendment. 547 U.S. at 421. The *Janus* Court ruled that "public-sector agency-shop arrangements violate the First Amendment." 585 U.S. at 916. Neither case concerned preferred pronouns or the job responsibilities of teachers.

Moreover, courts that *have* considered analogous cases — all in other circuits — have reached mixed results. Some courts found that the teacher's speech was not constitutionally protected. *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 836–839 (S.D. Ind. 2020); *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 680 F. Supp. 3d 1250, 1285–86 (D. Wyo. 2023); *Polk v. Montgomery Cnty. Pub. Sch.*, No. CV DLB-24-1487, 2025 WL 240996 at *11–12 (D. Md. Jan. 17, 2025). Other courts ruled that a teacher's use of pronouns is not part of their official duties and retains constitutional protection. *Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-CV-02237, 2024 WL 3758499 at *11–16 (N.D. Ohio Aug. 12, 2024); *Vlaming v. W. Point Sch.*

---

[27] Compl. – ECF No. 1 at 12–13 (¶¶ 116–123).

[28] Mot. – ECF No. 25 at 14.

United States District Court
Northern District of California

*Bd.*, 302 Va. 504, 565–573 (2023); *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021).

Given the lack of analogous, controlling precedent and conflicting out-of-circuit law, a reasonable school official would not have known that the alleged conduct violated the plaintiff's freedom of speech. The individual defendants are entitled to qualified immunity on those claims.

**2.2 Free Exercise of Religion**

The plaintiff also alleges that the individual defendants violated her constitutional right to free exercise of religion.[29] There is no binding, analogous precedent putting the defendants on notice that their conduct violated that right.

First, the plaintiff argues that she suffered discrimination like that suffered by a Christian baker who was issued a cease-and-desist order by the Colorado Civil Rights Commission after refusing to provide a cake to a same-sex couple.[30] *Masterpiece Cakeshop v. Colorado Civ. Rights Comm'n*, 584 U.S. 617 (2018). But *Masterpiece* is not particularized to the facts of this case. There, the Court set aside the Civil Rights Commission's order based on overt hostility towards the baker's religion. Specifically, the commissioner stated during a public meeting that "religion has been used to justify all kinds of discrimination throughout history" and that freedom of religion is "one of the most despicable pieces of rhetoric that people can use to — to use their religion to hurt others." *Id.* at 635. By contrast, here, the plaintiff does not allege public-facing comments. Instead, she argues hostility because the district enforced its policy and one defendant asked what about her faith prevents her from teaching transgender students.[31] The comment does not evince hostility to the degree of *Masterpiece*, particularly because it was asked in the context of providing accommodations.[32]

Similarly, the plaintiff argues notice based on the Ninth Circuit's decision in *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023).[33] But

---

[29] Compl. – ECF No. 1 at 16–17.

[30] Opp'n – ECF No. 35 at 19–23.

[31] Compl. – ECF No. 1 at 10 (¶ 84).

[32] *Id.* at 10 (¶¶ 84–88).

[33] Opp'n – ECF No. 35 at 22.

there, too, the decision was premised on overt hostility towards religion. The government official called the religious beliefs "bullshit," "deemed them without validity," and labeled the religious group "charlatans who conveniently forget what tolerance means[.]" *Id.* at 692. Again, the question alleged here is far less incendiary and the circumstances are different. Therefore, the *Fellowship* case did not put the defendants on notice.

Finally, analogous out-of-circuit cases only muddy the water for notice purposes. On the one hand, courts have found that rules requiring teachers to use students' preferred pronouns are neutral and generally applicable, and therefore do not violate free exercise. *Kluge v. Bownsburg Cmty. Sch. Corp.*, 432 F.Supp.3d 823, 834 (S.D. Ind. 2020); *Willey v. Sweetwater Cnty. Sch. Dist. No. 1*, 680 F.Supp.3d 1250, 1284 (D. Wyo. 2023). Conversely, a court concluded that a pronoun policy was not neutral and generally applicable where it allowed for individual exemptions. *Geraghty v. Jackson Local Sch. Dist. Bd. of Educ.*, 2024 U.S. Dist. LEXIS 142938 (N.D. Ohio, Aug. 12, 2024)

Therefore, school officials were not on notice that their conduct would violate the plaintiff's right to free exercise, and they are entitled to qualified immunity on that claim.

**2.3 Freedom from Unconstitutional Conditions**

Finally, the plaintiff claims that the defendants violated her right to be free from unconstitutional conditions.[34] The defendants are entitled to qualified immunity on this derivative claim for the same reasons discussed above.

**3. Failure to State a Claim**

The final issue is whether the complaint states a claim on which relief can be granted. The freedom of speech claims fail because the plaintiff's speech was not protected. The free exercise claim fails because the well-pleaded facts do not plausibly allege hostility towards Ms. Ramirez's religion.

[34] Compl. – ECF No. 1 at 17 (¶¶ 150–53).

### 3.1 Freedom of Speech

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418. Public employees retain First Amendment protection when commenting as a citizen on a matter of public concern. *Id.* at 421. But when public employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*.

The complaint fails to state a claim because the alleged speech was not protected. Ms. Ramirez agreed to serve as an elementary school teacher at a public school. To do the job, a teacher must address and interact with their students. As other courts have observed, while addressing students is not part of the curriculum itself, "it is difficult to imagine how a teacher could perform [their] teaching duties on any subject without a method by which to address individual students." *Kluge*, 432 F. Supp. 3d at 839 (referring to transgender students by chosen name was part of teacher's official duties and thus not subject to First Amendment protection).

The plaintiff's main argument in opposition — that the above analysis does not apply because this case concerns compelled speech — fails both legally and factually. While the Supreme Court has suggested that compelled speech outside of an employee's official duties warrants heightened protection, the government may insist that the employee deliver any lawful message when the speech is part of the employee's official duties. *Janus*, 585 U.S. at 908. As discussed above, the district adopted anti-discrimination policies regulating teachers' official duties; specifically, how they interact with students to facilitate learning. Regardless, as alleged in the complaint, the district offered Ms. Ramirez various accommodations before suspending and terminating her, such as calling transgender students by the first or last name, teaching another grade level, or teaching at a different school.[35] Thus, even the existence of compelled speech is suspect because the defendants "offer[ed] Ramirez accommodations to continue teaching by calling transgender

[35] *Id.* at 10 (¶ 88).

students by their last names — an accommodation that would have enabled her to avoid preferred names and pronouns."[36]

Additionally, even if Ms. Ramirez had been acting as a citizen, her refusal to use the student's preferred pronouns was not speech on a matter of public concern. To be sure, Ms. Ramirez was free to comment on the district's policies regarding preferred pronouns. Such speech may have addressed a topic of public concern: the reconciliation of religious views with gender identity. But that is not what Ms. Ramirez claims. Instead, the complaint alleges that she was disciplined for misgendering the student on the job. Her mere non-compliance with the district's policy does not convey a message warranting First Amendment protection.[37]

The complaint does not state a freedom-of-speech claim.

**3.2 Free Exercise**

To avoid strict scrutiny, rules that incidentally burden religion must be neutral and generally applicable. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). Moreover, the government cannot act in a manner hostile to religious beliefs or inconsistent with the Free Exercise Clause's bar on even subtle departures from neutrality. *Fellowship*, 82 F.4th at 686 (cleaned up).

Here, the plaintiff does not contest that the district's anti-discrimination policy is facially neutral. Instead, she contends that school officials were impermissibly hostile towards her religious beliefs when enforcing the policy.[38] The argument fails because, even accepted as true, the well-pleaded facts do not plausibly allege hostility.

The plaintiff cites the following acts as evidence of hostility: (1) threatening to suspend her without pay; (2) issuing multiple reprimands that became part of her employment file; (3) conditioning accommodations on an agreement to use "correct" pronouns;[39] (4) suspending her;

---

[36] Opp'n – ECF No. 35 at 18.

[37] Compl. – ECF No. 1 at 8 (¶¶ 69, 95, 100, 103, 107).

[38] Opp'n – ECF No. 35 at 6, 22.

[39] The complaint does not explain what this means. There are insufficient well-pleaded allegations to plausibly allege that the district conditioned accommodations designed to avoid the use of gendered

(5) bringing charges against her under a statute also used to terminate teachers for sexual abuse;[40] and (6) terminating her.[41] In other words, the district enforced its facially neutral policy. Thus, the acts may be consistent with, but do not plausibly allege, hostility as opposed to religiously neutral enforcement. And if mere enforcement is evidence of hostility, facially neutral and generally applicable laws would not be enforceable against those with religious beliefs, contrary to decades of First Amendment jurisprudence.

Finally, Ms. Ramirez claims hostility based on a question by one defendant, who allegedly asked what about Ms. Ramirez's religion prevents her from teaching transgender students. On its face, the question could be interpreted as hostile or not hostile. Moreover, the complaint alleges that it was asked in the context of providing Ms. Ramirez with accommodations. Therefore, there are insufficient facts to plausibly allege actionable hostility towards her religion.

The complaint does not state a free exercise claim.

### 3.3 Freedom from Unconstitutional Conditions

This derivative claim fails for the same reasons stated above.

## CONCLUSION

All claims against defendant Oakland Unified School District are dismissed with prejudice. Claims against the individual defendants are dismissed without prejudice. The plaintiff may file an amended complaint within 28 days.

**IT IS SO ORDERED.**

Dated: May 27, 2025

LAUREL BEELER
United States Magistrate Judge

---

pronouns on the use of gendered pronouns or otherwise required Ms. Ramirez to renounce her religious beliefs.

[40] The much-discussed allegation that the district likened Ms. Ramirez's conduct to that of a sexual predator is not well-pleaded. The only supporting fact is that the district terminated her using a statute that is also used to terminate teachers who abuse children. Compl. – ECF No. 1 at 2–3 (¶ 6). Without more information about the statute or the district's explanation, it does not follow that the district equated Ms. Ramirez's exercise of religion to sexual abuse.

[41] Compl. – ECF No. 1 at (17 (¶ 147).